UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANTANDER CONSUMER USA, INC. | § § § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CV-2420-M |
| UNION PONTIAC-GMC, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Union Pontiac-GMC, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, Motion to Transfer [ECF No. 10]. After carefully reviewing the motions, the Court determines that it lacks personal jurisdiction over the Defendant. However, rather than dismiss for lack of personal jurisdiction, the Court transfers this action to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1406(a).

1. **Background**

This case involves a contract dispute between Plaintiff Santander Consumer USA, Inc., an Illinois corporation with its principal place of business in Dallas County, Texas, and Union Pontiac-GMC, Inc., a Delaware corporation with its principal place of business in New Jersey. Pl. Pet. [ECF No. 1-3] ¶¶ 2–3. The parties entered into a Non-Recourse Dealer Retail Agreement (the "Agreement") governing the sale and purchase of retail installment sales contracts in connection with the sale of automobiles. *Id.* ¶ 7.

According to the allegations in Plaintiff's Petition, filed in state court prior to removal, Plaintiff is in the business of purchasing automobile retail installment sales contracts from automobile dealers such as Defendant. *Id.* ¶ 6. Plaintiff alleges that Defendant assigned four separate retail installment contracts (the "Missing Equipment Contracts") to Plaintiff, in which Defendant misrepresented the condition of the vehicles, and the equipment options included with the vehicles. *Id.* ¶¶ 9–10. Plaintiff maintains that these misrepresentations violate paragraph 8(J) of the Agreement, which obligated Defendant to repurchase the Missing Equipment Contracts. *Id.* Further, Plaintiff maintains that Defendant misrepresented customer information in violation of paragraph 8(h) of the Agreement, obligating Defendant to repurchase 102 contracts. *Id.* ¶ 14. Plaintiff also alleges various other violations of the Agreement, including failure to tender payment for cancelled "Additional Products and Services," pursuant to paragraph 4(c) of the Agreement, and failure to pay the value of reserve amounts. *Id.* ¶¶ 11–13.

Defendant contends that it is not a Texas business, does not maintain any physical presence or employees in Texas, does not solicit or advertise in Texas, and does not own or lease property in Texas. Defendant also contends that the Agreement was not negotiated or signed in Texas, does not reference Texas, and does not impose any contractual obligations to be performed in Texas.

On July 26, 2016, Plaintiff filed its Original Petition in the 192nd Judicial District Court in Dallas County, Texas. Defendant timely removed the case to this Court on the basis of diversity jurisdiction. Defendant now moves to dismiss this action for lack of personal jurisdiction or, in the alternative, to transfer the case to the United States District Court for the District of New Jersey.

## 2. Legal Standard

### a. Personal Jurisdiction

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of "mak[ing] a prima facie showing that personal jurisdiction is proper." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citing *Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)). The Court "must accept the plaintiff's uncontroverted allegations, and resolve in [its] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Monkton*, 768 F.3d at 431 (quoting *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)). In reviewing a motion to dismiss for lack of personal jurisdiction, the Court "may consider 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Revell*, 317 F.3d at 469 (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

The Court has the power to exercise personal jurisdiction over a defendant only if the following conditions are satisfied: "(1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *In re Chinese–Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 535 (5th Cir. 2014) (quoting *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)). Because "[t]he Texas long-arm statute extends to the limits of the Constitution," only the second prong of the test is at issue. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).

There are two categories of personal jurisdiction, general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). General jurisdiction exists when a foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at

home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 2846, 2851 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). For the Court to exercise specific jurisdiction over a nonresident who has not consented to suit in the forum, the nonresident must have contacts with the forum state that "arise from or are directly related to the cause of action." *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Plaintiff, as the party seeking to invoke the Court's power, bears the burden of establishing the Court's jurisdiction over Defendant. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (citing cases). If a district court, as here, decides a motion to dismiss without holding an evidentiary hearing, a prima facie case suffices to establish jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). A court must take uncontroverted allegations in the complaint as true, and it must resolve all factual conflicts favor of the plaintiff. *Pervasive Software*, 688 F.3d at 220 (citing *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). In deciding the motion, a court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (citing *Thompson*, 755 F.2d at 1165).

3. **Analysis**

Defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and for improper venue under Rule 12(b)(3). The Court will address each issue separately.

### a. Personal Jurisdiction

As a preliminary matter, the Court notes that in other cases filed in this District, under circumstances similar to those in this case, Santander has asserted that a court has personal jurisdiction over a nonresident car dealership. The courts to have considered this question have reached differing results. *Compare Santander Consumer USA, Inc. v. Car Smart, Inc.*, No. 3:09-cv-2317-G, 2010 WL 3703848 (N.D. Tex. Sept. 20, 2010) (finding personal jurisdiction over nonresident car dealership), *with Santander Consumer USA, Inc. v. Anchor Motor Co., Inc.*, No. 3:13-cv-154-N, 2013 WL 10914281 (N.D. Tex. Apr. 30, 2013) (finding the court lacked personal jurisdiction over nonresident car dealership), *and Santander Consumer USA, Inc. v. Shults Ford, Inc.*, No. 3:11-cv-614-L, 2011 WL 2601520 (N.D. Tex. June 30, 2011) (concluding that the defendant lacked sufficient contacts with the State of Texas to establish personal jurisdiction).

Here, it is clear, and the parties do not appear to contest, that the Court lacks general jurisdiction over Defendant, which is incorporated in Delaware and maintains its principal place of business in New Jersey. *See Daimler*, 134 S. Ct. at 749–50. The remaining question is whether the Court has specific jurisdiction over Defendant. In deciding that question, the Court focuses on "the relationship between the defendant, the forum, and the litigation." *In re Chinese–Manufactured Drywall,* 753 F.3d at 529. The Fifth Circuit mandates a three-step inquiry for an analysis of specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Monkton*, 768 F.3d at

433. If the plaintiff establishes the first two prongs, then the burden shifts to the defendant to show that the exercise of personal jurisdiction over it would not be fair or reasonable. *Id.*

The minimum contacts test is a fact-intensive inquiry, the touchstone of which is "whether the defendant's conduct shows that it 'reasonably anticipates being haled into court' [in the forum]." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Luv N' Care*, 438 F.3d at 470). Specific jurisdiction cannot be established through random, fortuitous, or attenuated contacts, nor from the "unilateral activity of a third party or another person." *McFadin*, 587 F.3d at 759 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In deciding whether a defendant purposefully availed itself of the privileges of conducting business in the forum state, for purposes of a breach of contract claim, the Fifth Circuit has considered the place where the contract was negotiated, the physical presence of the defendant's representatives in the forum, where contract performance is to take place, and any other contract clauses that show that the defendant should have reasonably anticipated being haled into court in the forum. *See, e.g.*, *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 (5th Cir. 2003).

Defendant maintains that it lacks jurisdictional contacts with the state of Texas. Plaintiff points to several alleged contacts that, it maintains, show a sufficient connection to Texas to give rise to specific jurisdiction. Some contacts alleged by Plaintiff appear to be Plaintiff's unilateral actions, which are insufficient to establish specific jurisdiction.[1] The majority of the contacts

---

[1] For instance, Plaintiff contends that (1) the Agreement was negotiated and executed in part in Dallas, Texas; and (2) the Agreement "was in fact performed in significant part in Dallas County, Texas." Pl. Resp. at 14–15. However, these alleged contacts must refer to Plaintiff's actions in preparing, executing, and acting under the Agreement, because Defendant maintains that none of its employees visited Texas in connection with the Agreement, the terms of the Agreement were preprinted and were not negotiated between Defendant and Plaintiff, and the Agreement was not signed by Defendant in Texas. Def. Mot. App., Aff. Manganelli [ECF No. 12 at 3] ¶ 5. Furthermore, Defendant maintains that printed information related to the loans was mailed to Plaintiff at a mailing address in Tennessee, not Texas. *Id.* ¶¶ 9–10. Indeed, the evidence presented by Plaintiff indicates that aspects of the Agreement that occurred in Texas were all performed by Plaintiff. Pl. Resp. App., Cherry Aff. [ECF No. 17 at

alleged by Plaintiff relate to Defendant's entry into the Agreement and the parties' subsequent actions pursuant to the Agreement.[2] Plaintiff also points to the Texas choice of law clause contained in the Agreement as a basis for personal jurisdiction. Pl. Resp. [ECF No. 16] at 15.

The Agreement, standing alone, is insufficient to establish minimum contacts. *See Anchor Motor Co.*, 2013 WL 10914281, at *3 ("The Supreme Court and the Fifth Circuit have long held that a nonresident defendant's contract with a resident plaintiff does not establish minimum contacts." (citing *Burger King*, 471 U.S. at 478; *Moncrief Oil*, 481 F.3d at 311)). Furthermore "[a]n exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law." *Moncrief Oil*, 481 F.3d at 312. Other than the choice of law clause, which states that the Agreement "shall be interpreted pursuant to the laws of the State of Texas," the Agreement makes no reference to Texas. Pl. App. [ECF No. 17] at App. 012. And while a choice of law clause is relevant to a personal jurisdiction analysis, it is not determinative. *Electrosource, Inc. v. Horizon Battery Techs, Ltd.*, 176 F.3d 867, 873 (5th Cir. 1999) ("[A]

---

4] ¶ 5 ("Santander performs all of its functions under the Dealer Agreement at Santander's offices in Dallas County, Texas . . . ."). Plaintiff's unilateral activities in Texas are insufficient to establish personal jurisdiction over Defendant. *McFadin*, 587 F.3d at 759. "[A] plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007).

[2] For instance, Plaintiff point to the following alleged contacts in support of specific jurisdiction: (1) Defendant's sale to Plaintiff of retail installment contracts pursuant to the Agreement; (2) Defendant's election to sell the contracts under the Agreement to Plaintiff, a Texas resident; (3) Defendant's selection of Plaintiff as the assignee of those contracts; (4) under the Agreement, Defendant indemnified Plaintiff for claims arising from Defendant's conduct under the Agreement; and (5) Defendant granted Plaintiff, a Texas resident, power of attorney to take certain actions on behalf of Defendant in performing under the Agreement. Pl. Resp. [ECF No. 16] at 14–15. The Court considers the first three alleged contacts to be coextensive with Defendant's actions pursuant to the Agreement, which the Court will discuss. *See Anchor Motor Co.*, 2013 WL 10914281, at *3 n.2. The fourth and fifth contacts are not contacts separate from the Agreement itself. *See id.*; *Shults*, 2011 WL 2601520, at *5 (noting that indemnity agreement was not "part of an enduring or substantial business relationship between the parties, such that Defendant had purposefully availed itself of the privilege of conducting business with Texas").

Plaintiff contends that (1) the Agreement was negotiated and executed in part in Dallas, Texas; and (2) the Agreement "was in fact performed in significant part in Dallas County, Texas." Pl. Resp. at 14–15.

choice-of-law provision should neither be ignored nor considered sufficient alone to confer jurisdiction."); *Anchor Motor Co.*, 2013 WL 10914281, at *3.

Even considering the Agreement in context with the parties' relationship and future obligations, Plaintiff has failed to establish minimum contacts to establish specific jurisdiction over Defendant. "In a breach of contract case, to determine whether a party purposefully availed itself of a forum, a court must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Burger King*, 471 U.S. at 479).

The facts of the case surrounding the parties' Agreement do not indicate that Defendant purposefully availed itself of Texas. First, it appears that the parties never negotiated or did business together prior to their conversations about the Agreement. Any negotiations between the parties were not extensive; Defendant maintains that the Agreement was "on a preprinted form" and the terms were not bargained for. Def. Mot. App., Manganelli Aff. [ECF No. 12 at 4] ¶ 5. Discussions between the parties prior to entering the Agreement appear to have taken place in New Jersey; Defendant maintains that Plaintiff's representative traveled to Defendant's dealership in New Jersey to solicit Defendant's business. Def. Reply App., Manganelli Aff. [ECF No. 21 at 5] ¶ 5.

Second, concerning contemplated future consequences, the Agreement merely provides a framework through which the parties may sell or purchase consumer contracts. By itself, the Agreement does not require either party to perform, let alone perform in Texas. Pl. Resp. App. at 9 ("*If* Dealer wishes [Plaintiff] to purchase a Contract hereunder, Dealer shall furnish . . . ." (emphasis added)). The Agreement does not contemplate future royalties, payments, or minimum sales, and does not require Defendant to act should it choose not to sell contracts to

8

Plaintiff. Therefore, the Agreement does not appear to contemplate any lasting or significant relationship between the parties, let alone consequences or possible obligations in Texas. *See Anchor Motor Co.*, 2013 WL 10914281, at *5 ("The Agreement's silence as to future consequences, like the parties' prior negotiations, suggests that Anchor did not establish minimum contacts with Texas.").

Third, the terms of the Agreement do not establish a connection to Texas. Other than the choice of law clause specifying Texas, the Agreement makes no reference to Texas. The Texas choice of law clause does indicate *some* connection to Texas, but it does not appear to be a significant one. Instead, the Agreement's terms suggest that the center of the parties' relationship is at Defendant's dealership, which is in New Jersey. For instance, the Agreement contains provisions centered around Defendant's dealership, such as terms governing the collection of down payments from Defendant's dealership customers, Defendant's proper license to conduct business in the state, and whether Defendant shall identify Plaintiff in any advertising on its premises. Pl. Resp. App. at 9–13. Furthermore, the consumer contracts at issue in this case were originated at Defendant's dealership in New Jersey. *See Shults*, 2011 WL 2601520, at *4 (finding that dealership's home state "is clearly the center of the parties' activities").

Fourth, the course of dealing between the parties was minimal. Although Defendant sold at least 100 consumer contracts to Plaintiff pursuant to the Agreement, the parties' relationship appears to have been limited in scope, and do not show that Defendant could have reasonably anticipated being haled into court in Texas. *See McFadin*, 587 F.3d at 759. Plaintiff presents evidence that Defendant transmitted loan information to Plaintiff's offices in Texas "through electronic communication." Pl. Resp. App., Cherry Aff. [ECF No. 17 at 5] ¶ 7. However, Defendant describes the electronic system for submitting proposed loans to Plaintiff as being a

web-based interface and a toll-free phone number, both of which lacked any indication that Plaintiff was reviewing loan documents in Texas. Def. Reply App. Manganelli Aff. ¶¶ 7–9. Defendant also describes how after Plaintiff purchased a contract, Defendant would send physical copies of funding materials to Plaintiff via Federal Express to an address in Tennessee. *Id.* ¶ 10.

Considering all of these factors together, the Court concludes that the Agreement and the course of the parties' dealings in association with the Agreement are insufficient to establish personal jurisdiction over Defendant in Texas. The sole justification for personal jurisdiction appears to be Defendant's contractual relationship with Plaintiff under the Agreement, which rests on "the mere fortuity that [Plaintiff] happens to be a resident of the forum." *Anchor Motor Co.*, 2013 WL 10914281, at *6 (quoting *Holt Oil*, 801 F.2d at 778). Accordingly, the Court concludes that it lacks personal jurisdiction over Defendant.

### b. Venue

All that remains is to determine whether the Court should dismiss for lack of personal jurisdiction or transfer the action. The Fifth Circuit has recognized that § 1406 allows a transfer of venue "where the first forum chosen is improper due to the existence of some obstacle to adjudication on the merits," including the lack of personal jurisdiction. *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). Upon a finding that it lacks personal jurisdiction, a district court can correctly cite § 1406(a) for the authority to transfer a case if it is in the interest of justice. *Id.* "The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). Courts "generally prefer transfer to dismissal." *Wolf*

*Network, LLC v. AML Diagnostics, Inc.*, No. 3-15-cv-3797, 2016 WL 1357742, at *3 (N.D. Tex. Apr. 5, 2016).

Transfer is generally preferable to dismissal, and the factors in this case weigh heavily toward transfer. *Wolf Network*, 2016 WL 1357742, at *3. When venue is improper, a court may, in the interest of justice, transfer the case to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Under the general venue statute, venue is proper in a judicial district in which the Defendant resides, or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. *Id.* § 1391(b)(1)–(2).

Venue is proper in the District of New Jersey. The Defendant's principal place of business is in New Jersey, and therefore Defendant resides in New Jersey, and it has sufficient contacts with New Jersey so as to establish personal jurisdiction over it there. Furthermore, Defendant consents to personal jurisdiction in New Jersey. The record before the Court also indicates that a substantial part of the events giving rise to Plaintiff's claim occurred in New Jersey; specifically, the origination of the retail installment contracts at issue took place at Defendant's dealership in Union, New Jersey, as well as signing of the Agreement by Defendant.

4. **Conclusion**

Based on the foregoing, although the Court determines that it lacks personal jurisdiction over Defendant, rather than to dismiss the case for lack of personal jurisdiction, the Court hereby transfers this action to the District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1406(a). All other relief not specifically granted is **DENIED**. The Court **ORDERS** that this case be promptly transferred to the United States District Court for the District of New Jersey.

**SO ORDERED.**

May 31, 2017.

*[signature]*
**BARBARA M. G. LYNN**
**CHIEF JUDGE**